**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| CRYSTAL CERVANTEZ-TKAC, et al., individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> VAN LAURENCE BARKER; JOSHUA JAMES KENNEDY; SIYUAN ZHENG; LIGHTHOUSE ESTATES LLC; and STARPOINT HOLDINGS LLC, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Case No. 3:26-cv-0280-CHB <br> ) <br> ) <br> ) Judge Claria H. Boom <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**[PROPOSED] ORDER APPOINTING EQUITY RECEIVER,**
**IMPOSING ASSET FREEZE, ENTERING ANTI-LITIGATION**
**INJUNCTION AND PROVIDING RELATED RELIEF**

This matter is before the Court on Plaintiffs' Motion for Appointment of an Equity Receiver (the "Motion"). The Court, having considered the Motion, the accompanying Memorandum in Support, the allegations of the Complaint, the declarations of proposed Receiver Michele Vives and proposed Receiver's counsel Terence G. Banich, and the record in this case, hereby FINDS and ORDERS as follows:

**FINDINGS OF FACT**

The Court hereby FINDS:

1.     **Jurisdiction and venue.** The Court has subject-matter jurisdiction under 28 U.S.C. § 1332(d) (CAFA) and supplemental jurisdiction under 28 U.S.C. § 1367. Venue is proper in this District under 28 U.S.C. § 1391(b).

2.     **Enterprise under no functioning management.** Defendant Van Laurence Barker, the sole operational principal of the Lighthouse/Starpoint enterprise, has been in federal custody

since December 19, 2025 on child-exploitation charges. (Compl. ¶ 140.) The Defendant entities' public-facing websites are dark, communications to the enterprise have gone substantially unanswered, and no Defendant entity has a functioning officer or agent capable of responding to discovery, preserving documents, or complying with third-party subpoenas. (Compl. ¶ 10.)

3.  **Admitted Ponzi-style mechanic.** The above-captioned defendants (collectively, "Defendants") have admitted, in their own writing and on recordings of meetings they themselves convened, that the enterprise operated as a "temporary system" in which PML "loans were effectively recycled internally" and became "unsustainable" when inflows slowed. (Compl. ¶ 26 & Ex. D.) Defendant Barker described the same mechanic in writing to Plaintiff Tkac (Compl. ¶¶ 132, 135) and on the October 3, 2025 Angels Meeting recording (Compl. ¶¶ 96–98, 112). On the February 5, 2026 PML call, Defendant Kennedy admitted a "Swap System" was "developed" and that the enterprise had "no runway to keep it going much longer," while a CPA-investor told him "[i]t's called a Ponzi scheme." (Compl. ¶ 142.)

4.  **Imminent danger of dissipation.** Assets of the enterprise are in imminent danger of being transferred, encumbered, or dissipated. Mortgage releases against enterprise collateral were recorded as recently as December 26, 2025 — one week after Barker's arrest. (Compl. ¶¶ 27, 140.) Transfers to Thailand-based Estella Management and Philippines-based Spain De Los Reyes have occurred. (Compl. ¶¶ 33, 115–117.) On April 15, 2026, the United States District Court for the Eastern District of New York entered temporary restraining orders against these same Defendants in *SummitBridge Wealth Mgmt. LLC v. Lighthouse Estates LLC*, No. 2:26-cv-00141-JMA-ST, ECF No. 73 (E.D.N.Y.).

5.  **Clear necessity.** Each factor of the Sixth Circuit's five-factor test in *PBGC v. Evans Tempcon, Inc.*, 630 F. App'x 410, 414–16 (6th Cir. 2015), and each material factor of the eight-

factor framework applied in *Burke & Herbert Bank & Trust Co. v. Bare Arms LLC*, No. 0:26-cv-00032-DLB-EBA, ECF No. 20 (E.D. Ky. Mar. 10, 2026), adopted, ECF No. 21 (E.D. Ky. Mar. 27, 2026), weighs in favor of appointment. This is a case of "clear necessity" within the meaning of *Evans Tempcon*, 630 F. App'x at 414, and no less drastic equitable remedy will protect the interests of Plaintiffs and the putative class.

6.      **Qualifications of proposed Receiver and Receiver's counsel.** Michele Vives, President of Douglas Wilson Companies, is qualified to be receiver in this matter and is independent of the parties. Terence G. Banich of Katten Muchin Rosenman LLP is qualified to serve as Receiver's counsel.

## ORDER

Based on the foregoing findings of fact, the Court hereby ORDERS:

## I.      APPOINTMENT OF RECEIVER.

7.      **Appointment and Purpose.** Michele Vives of Douglas Wilson Companies is hereby appointed as equity receiver (the "Receiver") over the Receivership Estate defined in Paragraph 8, effective immediately upon entry of this Order. The Receiver shall serve until further order of the Court. The purpose of the receivership created hereby is to collect, marshal and preserve assets for the benefit of the plaintiff class.

8.      **Receivership Estate.** The "Receivership Estate" comprises: (a) each named Defendant entity — Lighthouse Estates LLC and Starpoint Holdings LLC; (b) the affiliated entities identified in the Complaint, including without limitation Ceekou LLC, AVS Estates LLC, Red Door Legacy LLC, Taihe Estates LLC, Redwoods Real Estate LLC, Rhino Capital LLC, Wavewell Foundation, Horizon View Investments, ZiraCo, JAL Solutions, Hummingbird Aero, Bluestar Capital LLC, Brian Barker Aeronautical, Estella Management (Thailand), and Spain De Los Reyes

(Philippines) (collectively, the "Affiliated Entities"); (c) all assets of Defendants and the Affiliated Entities, including, without limitation, real and personal property; (d) all assets of the individual Defendants to the extent traceable to PML funds, subject to Paragraph 13 below; (e) all successor entities, nominees, custodians, and holders of property owned or controlled by any of the foregoing; (f) all corporations, limited liability companies and partnerships in which Defendants or or any Affiliated Entity directly or indirectly holds the equity interests in, are the officers, managers or directors of, or otherwise control. The Court hereby asserts exclusive in rem and quasi in rem jurisdiction over all Receivership Estate property, wherever situated.

9.      **Receiver's counsel.** Terence G. Banich of Katten Muchin Rosenman LLP is authorized to serve as Receiver's counsel, subject to the compensation framework in Paragraphs 22–23. The compensation terms in Mr. Banich's declaration are reasonable and are hereby APPROVED.

## II.    POWERS AND DUTIES OF THE RECEIVER.

10.     **General powers.** The Receiver shall have the full powers of an equity receiver under federal law and this Court's inherent equitable authority, including the power to: (a) take exclusive possession, custody, and control of all property of the Receivership Estate; (b) operate, preserve, and protect the Receivership Estate; (c) open and maintain receivership bank accounts; (d) retain professionals, including forensic accountants, property managers, appraisers, and additional counsel, subject to Court approval of compensation; (e) investigate the financial affairs of the Receivership Estate, including through examination of books, records, and electronically stored information; (f) pursue or compromise claims on behalf of the Receivership Estate; (g) initiate, maintain, or defend litigation in any forum necessary to identify, preserve, or recover estate property; (h) collect receivables and liquidate assets as the Receiver determines prudent, subject

to Paragraph 12; (i) issue document-preservation and information-request demands to any person or entity; (j) apply to the Court, when and as necessary, for an order reappointing her receiver in order to restart the ten-day period of 28 U.S.C. § 754; and (k) exercise all other powers a receiver may exercise under federal law.

11. **Document and ESI preservation.** The Receiver is authorized and directed to take immediate steps to secure all books, records, electronically stored information, communications, and tangible property of the Receivership Estate. Defendants, the Affiliated Entities, and their officers, directors, agents, employees, attorneys, accountants, and all persons acting in concert with them shall (a) preserve all documents and ESI relating to the Receivership Estate; (b) deliver to the Receiver, on demand, all documents, ESI, credentials, passwords, keys, and records within their possession, custody, or control relating to the Receivership Estate; and (c) cooperate fully with the Receiver's investigation.

12. **Liquidation subject to Court approval.** The Receiver shall not sell, transfer, or encumber any material asset of the Receivership Estate — defined as any asset or group of related assets with a fair market value exceeding $250,000 net of any valid secured indebtedness — without prior Court approval on notice to the parties. The Receiver may take all other actions necessary to preserve the Receivership Estate without separate application.

### III. ASSET FREEZE.

13. **Freeze.** Defendants, the Affiliated Entities and all persons acting in concert with them who receive actual notice of this Order — including officers, directors, agents, employees, attorneys, banks, and other financial institutions — are ENJOINED from directly or indirectly transferring, selling, assigning, pledging, hypothecating, encumbering, dissipating, concealing, or disposing of any asset of the Receivership Estate pending further order of the Court.

14.     **Financial institutions and title companies.** Upon service of this Order, any bank, broker-dealer, custodian, or other financial institution holding an account in the name of, or for the benefit of, any Defendant or Affiliated Entity shall (a) freeze such account; (b) immediately notify the Receiver of the account and its balance; and (c) transfer the funds to a Receiver-controlled account upon the Receiver's written instruction. All title companies, escrow agencies and similar persons and entities are hereby ORDERED to recognize the Receiver's legal authority over each Defendant and Affiliated Entity.

15.     **Recorded-document freeze.** County recorders and registrars in every jurisdiction in which the Receivership Estate holds real property shall decline to record any further instrument affecting title to Receivership Estate property (including mortgage releases, deeds, assignments, or liens) executed by or on behalf of any Defendant or Affiliated Entity, except upon written direction of the Receiver or further order of this Court.

## IV.     ANTI-LITIGATION INJUNCTION.

16.     **Stay of third-party actions.** Except as expressly authorized in Paragraph 17, all persons are ENJOINED from commencing, prosecuting, or continuing any action, proceeding, or enforcement effort against any Defendant, any Affiliated Entity, or the Receivership Estate — including arbitration, foreclosure of any security interest in real property in which any Defendant or Affiliated Entity has an interest, attachment, garnishment, execution, lien enforcement, or any other effort to collect from or enforce against Estate property — pending further order of the Court. This injunction is entered pursuant to the Court's inherent equitable authority and the All Writs Act, 28 U.S.C. § 1651. The Receiver may file motions to enforce this provision.

17.     **Carve-outs.** This injunction does not bar the continued prosecution of: (a) this civil action; (b) the parallel action *SummitBridge Wealth Mgmt. LLC v. Lighthouse Estates LLC*, No.

2:26-cv-00141-JMA-ST (E.D.N.Y.); (c) the criminal proceedings against Van Laurence Barker; or (d) any proceeding expressly authorized by further order of this Court on application by the Receiver or any party.

18. **Claims procedure.** The Receiver shall propose a claims procedure in the distribution plan required by Paragraph 21. PMLs and other claimants shall assert their claims through that procedure in lieu of separate actions against the Receivership Estate.

## V.    REPORTING REQUIREMENTS.

19. **Initial status report and inventory.** The Receiver shall file (a) an initial status report within 60 days of appointment, summarizing the Receivership Estate's composition, liquidity, and immediate preservation needs; and (b) a comprehensive asset inventory within 60 days of appointment, identifying all property of the Receivership Estate, the factual basis for inclusion of any individual-defendant asset under Paragraph 13, and all secured and unsecured obligations of which the Receiver is then aware.

20. **Distribution plan.** The Receiver shall file a proposed distribution plan when she concludes the Receivership Estate has been fully administered. The plan shall address, among other matters, the treatment of PMLs and other creditors, the method of calculating pro rata distributions in accordance with the "equality is equity" principle of *SEC v. Basic Energy & Affiliated Res., Inc.*, 273 F.3d 657, 671 (6th Cir. 2001), and the procedure for submission and adjudication of claims. The Court will set a hearing on the plan on notice to all interested parties. Plaintiffs shall coordinate with the Receiver regarding the interplay between the distribution plan and any judgment entered in, or settlement of, this civil action under Rule 23.

## VI.    COMPENSATION.

21.    **Fees payable from the Estate.** The Receiver, Receiver's counsel and any professionals retained by the Receiver shall be compensated from the Receivership Estate. Compensation shall be subject to Court approval on quarterly fee applications in the form customarily used in federal-court receiverships.

22.    **Interim compensation.** On or before the 20th day of each month for which compensation is sought, the Receiver shall file a statement of fees and expenses incurred for the prior month for herself, Katten and any other professionals the Receiver has retained. Such statements may, but need not, include a copy of the relevant invoice. Upon filing of such monthly statement, the Receiver shall pay, without further order of the Court, eighty percent (80%) of the fees and one-hundred percent (100%) of the expenses requested in the monthly statement ("Interim Payments"). An Interim Payment shall be deemed conditionally allowed by the Court until the Court reviews and allows such fees and expenses on a final basis pursuant to a quarterly fee application.

23.    **Quarterly fee applications.** The quarterly fee applications shall request final allowance and approval of the fees and expenses requested in the monthly statements for the prior three-month period, including all Interim Payments. At any hearing on a quarterly fee application the Court shall consider any objections filed and enter appropriate orders allowing such compensation on a final basis, and authorizing the Receiver to pay the full, approved amount of the fees.

## VII.   ANCILLARY PROCEEDINGS; PARALLEL LITIGATION.

24.   **Ancillary proceedings.** The Receiver is authorized, but not required, to initiate ancillary proceedings in any U.S. or foreign jurisdiction — including Thailand (with respect to Estella Management) and the Philippines (with respect to Spain De Los Reyes) — necessary to identify, preserve, or recover property of the Receivership Estate.

25.   **Coordination with E.D.N.Y. proceedings.** The Receiver shall coordinate with the plaintiffs in *SummitBridge* and with any other PML claimants who come forward, to ensure unified administration of the estate and to avoid duplicative recovery. *Provided, however*, the Receiver shall at all times exercise her own business judgment; neither Plaintiffs in this action, nor the plaintiffs in *SummitBridge* nor any other creditor may direct the Receiver to take (or decline to take) any particular action.

## VIII.   RESERVATION OF AUTHORITY.

26.   **Modification of scope.** The Court reserves authority to modify the scope of the receivership, the powers of the Receiver, and the terms of this Order on application by the Receiver, any Defendant, any PML claimant, or any other interested party. The Receiver shall file a motion seeking any material expansion of scope on notice to the parties.

27.   **Bond.** In the exercise of the Court's discretion, the Receiver need not post a bond.

28.   **Service of this Order.** Plaintiffs shall cause this Order to be served on each Defendant, each Affiliated Entity, the United States Attorney for the Western District of Kentucky, and each bank or other financial institution identified by the Receiver as holding property of the Receivership Estate, within seven (7) days of entry. The Receiver shall file a certificate of service upon completion.

29.     **Retention of jurisdiction.** The Court retains exclusive jurisdiction over the Receiver, the Receivership Estate, and all matters arising from or related to this Order.

**IT IS SO ORDERED.**

Dated: _____, 2026


_____
Honorable Claria H. Boom
United States District Judge
Western District of Kentucky